IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | | |
|---|---|---|---|
| SANDRA B. GUTHRIE, | ) | | |
|     Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Civil Action No. 1:11-cv-61 | |
| | ) | | |
| CYNTHIA L. MCCLASKY, | ) | By: | Michael F. Urbanski |
| CHERYL RHEY, | ) | | United States District Judge |
| and | ) | | |
| RUSS MCGRADY, | ) | | |
|     Defendants. | ) | | |

## MEMORANDUM OPINION

This case is before the court on defendants' motion to dismiss plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted. (Dkt. # 19). Because the plaintiff's Amended Complaint does not meet the pleading standard required to state a claim, defendants' motion to dismiss must be **GRANTED**.

### I.

Plaintiff Sandra B. Guthrie ("Guthrie") filed this action on August 23, 2011. Defendants responded on September 22, 2011 by filing a motion to dismiss and supporting memorandum. In response to the motion to dismiss, plaintiff moved to amend her complaint, arguing her proposed amended complaint provides more detail and additional facts that cure the defects identified in the motion to dismiss. In an Order dated November 21, 2011, the court granted defendants' motion to dismiss and plaintiff's motion to amend her complaint.

The Amended Complaint asserts the following claims under 42 U.S.C. § 1983 in four counts: "Violation of Liberty Rights" (Count I); "Violation of Property Rights" (Count II); "Violation of Procedural and Substantive Due Process" (Count III); and "Compensatory and

Punitive Damages" (Count IV). Guthrie asserts that defendants wrongfully terminated her employment with the Southwest Virginia Mental Health Institute ("SWVMHI"), falsely advised others that Guthrie resigned her position, and made untrue and inaccurate statements to the Virginia state licensing board in an effort to cause forfeiture of her state license to practice occupational therapy.

Guthrie worked for SWVMHI from April 2005 until April 30, 2010. (Am. Compl. ¶ 8). Guthrie alleges that on Friday, April 30, 2010, defendants McGrady and Rhey asked her to meet with them even though they knew she was ill and needed to go home. Guthrie claims that she became upset during the meeting and asked to go home. The Amended Complaint further alleges that defendant Rhey provided plaintiff with a leave slip and Guthrie went home, believing she would be able to return to work on the following Monday. (Am. Compl. ¶¶ 9-10). Guthrie alleges that defendants falsely informed Human Resources that Guthrie had resigned her position and requested that Maintenance change the locks to Guthrie's work area. (Am. Compl. ¶ 11). Guthrie denies resigning and suggests that there was no basis for a resignation, as she routinely received positive performance evaluations. (Am. Compl. ¶¶ 12-13). Additionally, Guthrie alleges that defendants made false statements about her to the state-licensing agency in an attempt to have plaintiff's occupational therapy license revoked. (Am. Compl. ¶ 16). Finally, Guthrie alleges that defendants "unlawfully retain[ed] an abundance of Plaintiff's personal property following Plaintiff's termination, by refusing . . . to return same to Plaintiff." (Am. Compl. ¶ 16).[1]

---

[1] Plaintiff appears to allege a myriad of other wrongdoing, some of which appears unrelated to her termination. These include wrongfully terminating other individuals at SWVMHI, theft of state property, fraudulent Medicare billing, and falsification of state documents. (Am. Compl. ¶¶14-16). To the extent that these disparate allegations are not related to Guthrie's claims concerning the events surrounding the termination of her employment, she does not have standing to raise them. To state a case or controversy under Article III, a plaintiff must establish standing. Allen v. Wright, 468 U.S. 737, 751 (1984). The minimum constitutional requirements for standing were explained in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992):

Defendants have moved to dismiss Guthrie's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When reviewing a claim under Rule 12(b)(6), the court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id. at 244. A valid complaint cannot rest on legal conclusions alone. Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S.Ct. 1937, 1950 (2009). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## II.

In her Amended Complaint, Guthrie asserts claims under 42 U.S.C. § 1983, which imposes civil liability on any person acting under color of state law who deprives another person of rights and privileges secured by the Constitution and laws of the United States. Although separated into four counts, the allegations of the Amended Complaint essentially raise two substantive legal challenges to her termination and its aftermath: a deprivation of protected

---

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. at 560-561. Under this standard, Guthrie has no standing to allege injuries to persons or entities other than herself, including claims that others were wrongfully terminated, state property was purloined, the Medicare system was defrauded or state records unrelated to her were falsified.

3

property and liberty interests in violation of the Due Process Clause of the Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution provides that no state "shall . . . deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV. This clause has both substantive and procedural components. "Procedural due process imposes constraints on governmental decisions, which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause. . . . " Mathews v. Eldridge, 424 U.S. 319, 332 (1976). This component requires the government to provide certain procedural protections whenever it deprives a person of certain liberty or property interests. Bd. of Regents v. Roth, 408 U.S. 564, 576 (1972). In contrast, substantive due process "bar[s] certain governmental actions regardless of the fairness of the procedures used to implement them." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (internal citations omitted). It "provides heightened protection against government interference with certain fundamental rights and liberty interests." Troxel v. Granville, 530 U.S. 57, 65 (2000) (internal citations omitted).

**A.**

In Count I of her Amended Complaint, Guthrie alleges that she was deprived of a liberty interest protected by the Fourteenth Amendment. Specifically, Guthrie contends the defendants deprived her of her "right to work at her chosen occupation, without just cause" and that defendants made "numerous publications of untrue and inaccurate statements to, inter alia, the state Licensing Board regarding the plaintiff, her alleged actions . . . professional qualifications and veracity, in an attempt to cause forfeiture of Plaintiff's state license to practice as an OT [occupational therapist]." (Am. Compl. ¶ 23). For the following reasons, the court concludes that this count must be dismissed.

4

The liberty interests protected by the Fourteenth Amendment include the freedom "to engage in any of the common occupations of life." Roth, 408 U.S. at 572. This right, however, is not so broad as to protect an individual's right to a particular job. Instead, "[i]t is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." Piecknick v. Pennsylvania, 36 F.3d 1250, 1259–1260 (3d Cir. 1994) (internal citations omitted); see also Habhab v. Hon, 536 F.3d 963, 968 (8th Cir. 2008) (quoting Piecknick and holding that the plaintiff, a tow truck operator, had not been deprived of any liberty interest when state troopers ordered him to vacate towing sites after being retained); Ulichny v. Merton Cnty. Sch. Dist., 249 F.3d 686, 704 (7th Cir. 2001) ("The concept of liberty protected by the due process clause has long included occupational liberty – the liberty to follow a trade, profession, or other calling. The cases have consistently drawn a distinction, however, between occupational liberty and the right to hold a specific job. The due process clause of the Fourteenth Amendment secures the liberty to pursue a calling or occupation, and not the right to a specific job.") (internal citations omitted). As the Supreme Court emphasized in Roth, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he is simply not rehired in one job but remains as free as before to seek another." 408 U.S. at 575. In short, Guthrie has no protectable liberty interest in her specific job at SWVMHI.

Guthrie also appears to base her liberty interest claim on allegedly false statements made by defendants to employees at SWVMHI and to an investigator from the state licensing board. The Supreme Court has acknowledged that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Id. at 573 (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)). "The purpose of such notice and hearing is to provide the person an opportunity to clear

5

his name." Id. at 573 n.12. It is well established that employees have a constitutionally protected liberty interest in their "good name, reputation, honor or integrity," and that the liberty interest "is implicated by public announcement of reasons for an employee's discharge." Johnson v. Morris, 903 F.2d 996, 999 (4th Cir. 1990). That interest has been defined as "that of being free from arbitrary restrictions upon the opportunity for other gainful employment stemming from the reasons voluntarily given by government for lawfully terminating . . . at-will public employment." Boston v. Webb, 783 F.2d 1163, 1167 (4th Cir. 1986). The interest protected is "not to remain employed . . . but . . . merely to 'clear [one's] name' against unfounded charges." Id.

In order to state a claim for violation of the liberty interest in her good name and reputation, "plaintiff must allege facts sufficient to show (i) that '[her] superiors made charges against her that might seriously damage [her] standing and associations in [her] community or otherwise imposed on [her] a stigma or other disability that foreclosed [her] freedom to take advantage of other employment opportunities,' (ii) that the charges were made public by the employer, (iii) that the charges were false, and (iv) that the stigmatizing remarks were made in the context of a discharge or significant demotion." Echtenkamp v. Loudon Cnty. Pub. Sch., 263 F. Supp. 2d 1043, 1056 (E.D. Va. 2003) (citing Stone v. Univ. of Md. Medical Sys. Corp., 855 F.2d 167, 172 n.5 (4th Cir. 1988) (internal quotations omitted); see also Roth, 408 U.S. 573–75 (finding that a decision not to rehire an assistant professor at a state university did not impose a stigma on plaintiff such that he would be unable to secure employment in his field).

The allegations of the Amended Complaint fail to clear the first threshold. First of all, simply stating that Guthrie had resigned contains no stigma or damage to her standing in the community. As regards Guthrie's allegations that false statements were made to Virginia

6

licensing officials, Guthrie's Amended Complaint is devoid of any specific facts sufficient to state a claim. In paragraph 15 of the Amended Complaint, Guthrie alleges that:

> Defendants engaged in unlawful acts in an attempt to cover-up their wrongful termination of Plaintiff. This was done by acts including, but not limited to, providing deliberately false statements to employees at SWVMHI that plaintiff had resigned during the meeting and falsifying numerous state documents alleging same; providing false information, including but not limited to, the foregoing, to Carole Crutchfield, investigator from the state Licensing Board in Richmond. . . .

Paragraph 15 nowhere indicates, however, what "false information" was provided to the state licensing board. Paragraphs 18 and 23 are similarly devoid of any specific facts concerning the statements made to the state licensing authorities. Paragraph 18 alleges only that defendants made "false allegations against Plaintiff with the Virginia Department of Health Professionals," and paragraph 23 alludes to "their numerous publications of untrue and inaccurate statements to, inter alia, the state Licensing Board." Guthrie's allegations contain no facts suggestive of a deprivation of a protectable liberty interest. The Amended Complaint claims that the defendants relayed "false information," "false allegations," and "untrue and inaccurate statements," but does not indicate what those alleged falsehoods consisted of, or how they may have affected Guthrie's reputation.

In order to assert a constitutional claim, Guthrie must allege that the statements made about her rose to the level of "imply[ing] the existence of serious character defects such as dishonesty or immorality." Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982). In Robertson, the Fourth Circuit held that "[a]llegations of incompetence" alone do not give rise to a protected liberty interest. 679 F.2d at 1092; see also Zepp v. Rehrmann, 79 F.3d 381, 388 (4th Cir. 1996) (rejecting deprivation of liberty interest claim where employer announced that

7

plaintiff was being forced to retire "due to management problems" – an accusation, at most, "of incompetence or unsatisfactory job performance").

On the other hand, a liberty interest is implicated by a public announcement that an employee was discharged after failing to disprove an allegation of receiving a bribe, Boston v. Webb, 783 F.2d at 1165-66; an announcement linking a discharge to an investigation of financial irregularities, thus insinuating dishonesty, Cox v. N. Va. Transp. Comm'n, 551 F.2d 555, 557-58 (4th Cir. 1976); or charges of violating regulations that "smack of deliberate fraud" and "in effect allege dishonesty," McNeill v. Butz, 480 F.2d 314, 319–20 (4th Cir. 1973). See also Sciolino v. City of Newport News, 480 F.3d 642, 647 n.2 (4th Cir. 2007) (former police officer sufficiently alleged liberty interest claim where he was terminated by letter accusing him of falsely advancing an odometer on his police cruiser, thus deliberately destroying city property in violation of a department regulation, implying the existence of serious character defects such as dishonesty or immorality); Ridpath v. Bd. of Governors of Marshall Univ., 447 F.3d 292, 308–09 (4th Cir. 2006) (public announcement of corrective action taken against university's compliance officer implicated protected liberty interest). In contrast to these cases, Guthrie's Amended Complaint nowhere contains any allegations suggesting such a character defect.

Viewing the allegations in the Amended Complaint in the light most favorable to her, it cannot be said that Guthrie has sufficiently alleged that defendants made charges implying serious character flaws. Because the Amended Complaint sheds no light on just what the alleged false statements may have been, Guthrie fails to sufficiently allege that defendants' comments had such stigma or otherwise foreclosed her freedom to take advantage of other employment opportunities in the occupational therapy field. See Roth, 408 U.S. at 573 (noting that in declining to re-employ plaintiff, there was no suggestion that the state "imposed a stigma or

8

other disability that foreclosed his freedom to take advantage of other employment opportunities"). Guthrie's conclusory allegations completely lack any grounding in fact and do not provide a sufficient foundation upon which to base a claim. Guthrie has not suggested, much less alleged, that defendants have accused her of dishonesty or immorality. Had such allegations been made, this would be a different case. But as in Roth, "there is no suggestion whatever that the respondent's good name, reputation, honor, or integrity is at stake." Id.

Further, Guthrie's Amended Complaint does not allege that her state license has been adversely impacted, that she has lost the ability to pursue a career in occupational therapy, or that defendant's actions have had any effect on her ability to obtain employment in her chosen field. The Amended Complaint lacks any allegation that Guthrie has sought employment in her chosen field and that such employment opportunities were foreclosed to her as a result of defendants' conduct. Guthrie's vague insinuations of false statements do not constitute facts sufficient to make her cause of action plausible under the applicable standard. As the foregoing decisions make clear, such conclusory allegations fall short of demonstrating that the defendants' actions implicated a cognizable liberty interest. In determining whether a plaintiff's procedural due process rights have been violated, "[o]nly if we find a protected interest do we examine whether the deprivation of the protected interest was done in accordance with due process." Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir. 2005). "Finding no protected [liberty interest], we need not decide what, if any, procedural process was due." Id. at 1057. As Guthrie's allegations do not sufficiently allege a deprivation of a protectable liberty interest, any claimed violation of due process associated therewith must be dismissed.[2]

---

[2] To be clear, Guthrie's Amended Complaint fails across the board to allege a protectable liberty interest. Therefore, to the extent such a claim is asserted in Counts I, III or IV of her Amended Complaint, those counts are dismissed.

9

**B.**

Count II of Guthrie's Amended Complaint alleges that she had a constitutionally protected property interest in her continued employment with the SWVMHI, and that the defendants deprived her of that interest by terminating her without just cause or due process. To support this claim, Guthrie contends that she possessed a legitimate entitlement to continued employment "by virtue of her length of employment (more than one year) with SWVMHI . . . ." (Am. Compl. ¶ 25). The parties agree, for the purposes of this motion, that Guthrie has alleged a property right in her continued employment at SWVMHI.[3]

Nevertheless, Guthrie's Amended Complaint fails to state a claim because she does not sufficiently allege the nature of the procedural due process violation. Even assuming that Guthrie had a protected property interest in continued employment and that she was deprived of said interest as a result of her termination, the constitutional inquiry does not end there.

> The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

Zinermon v. Burch, 494 U.S. 113, 126 (1990).

Further, to prevail on a procedural due process claim, "a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); see also Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due

---

[3] Defendants "acknowledge that Plaintiff has alleged a property interest in her former position and further acknowledge that Plaintiff alleges that she was deprived of said property interest by state action." (Dkt. # 20, p. 8).

10

process requirements when it has made procedural protection available and the plaintiff has simply refused to avail [her]self of them."). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what [s]he wants." Alvin, 227 F.3d at 116.

In this case, Guthrie's Amended Complaint is devoid of any allegations of procedural deficiencies related to her termination. Her only allegation is utterly conclusory – that she was deprived of "a meaningful hearing." (Am. Compl. ¶¶ 17, 28.) Guthrie makes no allegations that she was denied administrative grievance procedures, nor does she allege that such procedures were available, but were constitutionally flawed.[4] As to the specifics of Guthrie's procedural due process claim, the Amended Complaint simply is silent. In short, the Amended Complaint provides no clue as to the claimed procedural deficiency with her termination. Rule 8 of the Rules of Civil Procedure requires that Guthrie identify the procedural flaws in her termination that she believes deprived her of due process. The Amended Complaint provides no hint as to the nature of the claimed due process violations, and neither the defendants nor the court should have to guess at them.

To the extent Guthrie attempts to assert a substantive due process claim arising from the deprivation of her alleged property interest in continued employment with SWVMHI, that claim

---

[4] Based on two exhibits attached to their Memorandum, defendants assert that Guthrie was afforded the opportunity to present her grievance to defendant McClaskey as well to the Department of Employment Dispute Resolution. Defendants argue that the court may consider these documents related to Guthrie's grievance without converting defendants' motion to dismiss to a motion for summary judgment because the documents are public records. (Dkt. # 20, p. 10, n.1) (citing Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)). The exhibits are of limited value. The Qualification Ruling of Director (Exhibit A), shows that the plaintiff was granted access to the grievance procedure, and that her grievance qualified for a hearing. The Compliance Ruling of Director (Exhibit B) merely shows that the Department declined to grant plaintiff's request to remove a hearing officer from her case. Neither of these documents demonstrates that plaintiff "elected not to proceed with her grievance hearing," as alleged in defendants' Memorandum (Dkt. # 20, p. 10). Although documents provided by defendants suggest that plaintiff made some use of grievance procedures, there are no allegations in the Amended Complaint concerning the availability or use of administrative grievance procedures. Again, Guthrie's Amended Complaint is simply too sparse and conclusory to allow the court to reach any meaningful conclusions about the administrative grievance procedure.

also must be dismissed. "Unlike rights subject to procedural due process protection, which arise from sources other than the Constitution, substantive due process rights arise solely from the Constitution." Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1142 n.10 (4th Cir. 1990) (professor's interest in position in university department "is essentially a state law contract right, not a fundamental interest embodied in the Constitution").

> [W]hen a plaintiff challenges a non-legislative state action (such as an adverse employment decision), [a court] must look, as a threshold matter, to whether the property interest being deprived is "fundamental" under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not "fundamental," however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.

Nicholas v. Penn. State Univ., 227 F.3d 133, 142 (3d.Cir. 2000) (holding that "public employment is [not] a fundamental property interest entitled to substantive due process protection"); see Singleton v. Cecil, 176 F.3d 419, 425-26 (8th Cir. 1999) (en banc) ("a public employee's interest in continued employment with a governmental employer is not so 'fundamental' as to be protected by substantive due process"); McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994) (en banc) ("employment rights are not 'fundamental' rights created by the Constitution"); Local 342, Long Island Public Serv. Employees v. Town Bd. of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994) ("We do not think, however, that simple, state-law contractual rights, without more, are worthy of substantive due process protection."); Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1350 (6th Cir. 1992) ("plaintiff's state-created right to tenured employment lacks substantive due process protection"); Lum v. Jensen, 876 F.2d 1385, 1389 (9th Cir. 1989) (finding "no clearly established constitutional right to substantive due process protection of continued public employment"); Kauth v. Hartford Ins. Co. of Ill., 852 F.2d 951,

12

958 (7th Cir. 1988) ("In cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest . . . the plaintiff has not stated a substantive due process claim."). But see Newman v. Massachusetts, 884 F.2d 19, 25 (1st Cir. 1989) ("school authorities who make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status are liable for a substantive due process violation").

Even if substantive due process claim was applicable under these circumstances, Guthrie's Amended Complaint fails to meet the standard required to state such a claim. The applicable test for a substantive due process violation is whether the plaintiff has established a property or liberty interest, whether the state has deprived her of said interest, and whether the alleged conduct is "so egregious, so outrageous, that may fairly be said to shock the conscience." Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir. 1999). The Due Process Clause of the Fourteenth Amendment was intended to prevent the government from "abusing [its] power, or employing it as an instrument of oppression." Collins v. Harker Heights, 503 U.S. 115, 126 (1992). Based on Guthrie's sparse allegations, defendants' actions cannot be said to meet the high standard required to state a substantive due process claim. Accordingly, Guthrie's substantive due process claim asserting a deprivation of her property right in her employment must be dismissed.[5]

Guthrie also includes in Count II an allegation that defendants have violated her property rights by "intentionally retaining possession of numerous items belonging to plaintiff even after she requested same through HR." (Am. Compl. ¶ 26). It is difficult to discern just what violation of law Guthrie intends by this cryptic allegation. She includes this paragraph under Count II, entitled "Violation of Property Rights 42 U.S.C. § 1983." Although the facts

---

[5] Again, to the extent Guthrie asserts a deprivation of a property interest in her employment in Counts II, III or IV, all such claims are insufficiently plead and must be dismissed.

13

surrounding this hazy allegation seem to suggest a state law claim for conversion of property, Guthrie does not allege a separate count for conversion, nor does she plead any facts that would give this court jurisdiction over a state law conversion claim. In Virginia, "[c]onversion is any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession . . . [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it . . . ." Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 76, 92 S.E.2d 359, 365 (1956). Guthrie's Amended Complaint does not identify the property she claims was withheld from her, nor does she allege facts sufficient to bring defendants' wrongful control of the same above the entirely speculative level. To the extent Guthrie intends to assert a due process claim with regard to this property, her allegations are even more attenuated, as she provides no clue as to her alleged property interest, or any efforts to utilize any administrative or state law avenues available to her to obtain return of her property.[6]

Finally, although not spelled out with any clarity, two clauses of paragraph 15 of the Amended Complaint appear to hint at a First Amendment retaliation claim. In that paragraph, Guthrie alleges that:

> Defendants engaged in unlawful acts in an attempt to cover-up their wrongful termination of Plaintiff. This was done by acts, including, but not limited to . . . terminating Plaintiff from her employment at least in part, because Plaintiff had expressed concern about Rhey's repeated falsification of state documents regarding her misuse of state time (including, but not limited to, sleeping on the job, leaving work for hours to "drive around and look at the leaves," crocheting in her office); engaging in the pattern and practice of Medicare fraud and terminating Plaintiff, in part, because of her knowledge of same. . . .

(Am. Compl. ¶ 15).

---

[6] Although it is difficult to say at this point given the sketchy nature of plaintiff's allegations, it appears doubtful that a federal due process claim would lie in this case as the Virginia Tort Claims Act, Va. Code § 8.01-195.1 (2000), provides an adequate post-deprivation remedy for the unlawful conversion of personal property. See Phelps v. Anderson, 700 F.2d 147, 149 (4th Cir.1983).

In order to make out a claim for First Amendment retaliation, Guthrie must show (i) that she engaged in speech on a matter of public concern, (ii) that the retaliatory action deprived her of some valuable benefit, and (iii) that there is a causal connection between the protected action and the retaliatory speech, which would not have occurred "but for" the protected expression. Holland v. Rimmer, 25 F.3d 1251, 1254 (4th Cir. 1994); Huang, 902 F.2d at 1140. As to the first element, in determining whether particular speech is protected under the First Amendment, courts consider: "(1) whether a public employee's speech qualifies as a matter of public concern, and (2) what effect the speech has on the efficiency, discipline, and proper administration of the workplace." Holland, 25 F.3d at 1254. To determine whether speech involves a matter of public concern, courts examine the "content, context, and form of the speech at issue in light of the entire record." Urofsky v. Gilmore, 216 F.3d 401, 406 (4th Cir. 2000).

Here, Guthrie's passing references to "express[ing] concern over Rhey's falsification of state documents regarding her misuse of state time" and her "knowledge" of Medicare fraud, (Am. Compl. ¶ 15), are insufficient to state a retaliation claim, principally because Guthrie does not allege that she engaged in speech protected by the First Amendment. Allegations that she "expressed concern" and had "knowledge" of alleged wrongdoing are simply too vague and uncertain to state an actionable First Amendment retaliation claim.

In sum, the court is obliged to conclude, for the reasons set forth above, that the allegations in Guthrie's Amended Complaint are insufficient to state a claim of constitutional proportions.[7] Therefore, the defendants' Motion to Dismiss is **GRANTED**. Nevertheless, the court believes that Guthrie should be accorded one final opportunity to amend her complaint in a manner consistent with the requirements of Iqbal and Twombly. See Sciolino v. City of

---

[7] Defendants also raise qualified and absolute immunity defenses. Because plaintiff's allegations lack a sufficient basis in fact, and because the court will allow plaintiff the opportunity to amend her pleading, the court will not address the immunity defenses at this time.

Newport News, 480 F.3d 642, 650-51 (4th Cir. 2007).  Accordingly, Guthrie will be given an opportunity to file a Second Amended Complaint within fourteen (14) days of the date of the entry of the accompanying Order granting defendants' Motion to Dismiss.

If Guthrie fails to file a Second Amended Complaint within fourteen (14) days of the accompanying Order, this case will be dismissed with prejudice.

The Clerk of the Court is hereby directed to send a certified copy of the Memorandum Opinion to all counsel of record.

Entered:  April 12, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge